**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Ronald Deshuk,** | ) | **CASE NO. 1:16 CV 2372** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **G4S Secure Solutions (USA) Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

### Introduction

This matter is before the Court upon defendant's Motion for Summary Judgment (Doc. 24). For the following reasons, the motion is GRANTED.

### Facts

Plaintiff Ronald Deshuk filed an Amended Complaint against defendant G4S Secure Solutions. The Amended Complaint sets forth two claims. Count One alleges sex and age discrimination under federal law.[1] Count Two alleges age and sex discrimination, as well as

---

[1] Count One had also alleged retaliation under federal law, but this Court dismissed that portion of the claim by prior Memorandum of Opinion and Order because plaintiff had not presented that claim to the EEOC with his charge.

1

retaliation, under state law.

Art Jaskiewicz, defendant's Operations Manager of the Cleveland office, avers the following. Defendant provides security services nationally, including security professionals. The Cleveland office provides "overhead services" to approximately 320 G4S employees in Ohio. On January 1, 2014, defendant began providing contract security services at Republic Steel, a steel mill property. Plaintiff was already employed as a security guard at the Republic Steel site, and transferred his employment from the previous contract security company to defendant. Jaskiewicz approved plaintiff's hire, knowing he was male and over 40 years of age.[2] From January to July 2014, plaintiff worked the second shift, from approximately 3 p.m. to 11 p.m. During this time, plaintiff worked Mondays through Fridays, and would work Saturday and/or Sunday if there was a manpower shortage. Plaintiff also maintained a second job managing a car wash, where he worked in the mornings seven days per week.

In late July 2014, defendant changed its schedule at the request of Republic Steel, and in an effort to reduce labor costs at the site. In particular, Republic Steel eliminated a post position to which plaintiff and other security officers had been assigned, necessitating a consolidated labor schedule that saved 120-180 hours per week in labor costs. This global scheduling change affected all second and third shift employees of defendant working at Republic Steel. Plaintiff's schedule changed to 2 p.m. to 10 p.m. (still the second shift), with his scheduled days off becoming weekdays instead of weekends. Defendant offered to move plaintiff to first shift so that he would only have to work on weekdays, but plaintiff declined due to his car wash job.

---

[2] In January 2014, plaintiff was 57 years old. (*See* Amended Complaint ¶ 3)

2

On March 31, 2016, defendant's contract with Republic Steel terminated due to the closure of the steel mill. Defendant then offered plaintiff alternative positions, which he declined. (Jaskiewicz aff.)

Plaintiff testified at deposition that when defendant lost the contract with Republic Steel on March 31, 2016, defendant offered plaintiff other positions at different sites but he declined. Plaintiff was ready to "enjoy retirement" and already had a retirement income. Driving to the other sites was not worth it. Plaintiff figured he would let the others he had worked with, and who needed the income, get the positions. But, when Randy Hicks, who was head of security at Republic Steel, called and offered him a security guard position (within one week after defendant lost the contract) with the successor contractor at the Republic Steel site, plaintiff accepted. The site was located conveniently close to plaintiff's home and plaintiff knew "pretty much everything about the mill." Plaintiff lost no wages. Plaintiff still works at the site Monday through Saturday, 3 p.m. to 11 p.m. Although the factory is no longer operational, one guard per shift works to patrol the site. (pltf. depo. 38-50)

Plaintiff presents his own affidavit, averring the following. He worked for defendant as a security guard at the Republic Steel Lorain Works from January 3, 2014 until March 31, 2016 when defendant lost the contract to provide security services. He worked the second shift (Monday through Friday, 2 p.m. to 10 p.m.), and had worked the same hours since 2008 or 2009 when working for the two predecessors who held the security contract at Republic Steel. The schedule changes were announced by site supervisor Dan Laska on July 23, 2014, and affected only the second and third shift guards who were primarily older and male. First

shift guards, who were primarily female under age 30, were not affected by the change. Dan Laska, in his thirties, also worked the first shift.

As plaintiff no longer had weekends off as of July 23, 2014 (he now had Tuesdays and Wednesdays off), he could not participate in family events including those with his grandchildren who lived in Toledo, Ohio and southern Michigan, as he previously did regularly. Plaintiff could no longer attend his grandchildren's sporting and school events, weddings, birthday parties, first communions, and baptisms. Nor could plaintiff continue to attend Sunday mass with his wife which he also previously did regularly. Plaintiff did have a part-time job at a car wash which was compatible with his second shift job with defendant. He worked seven days a week, generally from 8 a.m. through noon.

About three weeks before defendant changed the schedule, there was a meeting during the second shift with eight or nine second and third shift guards attending. The meeting was called because of complaints regarding favorable treatment of the first shift females. Plaintiff attended. Dan Laska, Ron Cerney (Laska's supervisor), and Randy Hicks (Republic Steel's Director of Security) were also present. It was apparent that Laska was upset during the meeting, and said something to the effect of "I got you on my radar."

Plaintiff recalled that on another occasion when he and another older worker complained about something, Laska said, "Don't act like a child act like a man." Laska also told plaintiff, "If you don't like it old man you can quit." (pltf. aff.) [3]

---

[3] Along with its reply, defendant filed a "Notice of Objection" to plaintiff's affidavit and a "Notice of Objection" to Eduardo Burgos's affidavit (which is discussed below). Defendant asks that the affidavits be excluded in part. To the extent the Notices are construed as motions, they are denied. As to plaintiff's affidavit, defendant maintains that plaintiff's statements regarding Dan Laska's

4

Plaintiff also submits the affidavits of Eduardo Burgos (a former EMT and third shift supervisor with defendant) and Denver Casto (a former third shift part-time security guard with defendant). Burgos avers the following. He came in contact with guards working the first and second shifts. The first shift consisted of three women, all in their twenties, and Daniel Laska (in this thirties) who was the first shift supervisor and site manager for all three shifts. Burgos was aware of the favoritism afforded the women on first shift with regard to the terms and conditions of their employment which was not afforded to the second and third shift guards. As a result of complaints made by second and third shift guards, a meeting was held in early July. Burgos attended and so did plaintiff as well as guards from each of the shifts. Laska was noticeably upset and told the people attending that they "were on his radar." Randy

---

comments (¶¶ 14, 15) should be excluded because plaintiff never mentioned these comments in the Amended Complaint. However, a pleading need only give fair notice of the employment discrimination claim and does not have to include all evidence supporting the claim. Defendant also complains that plaintiff did not reveal these comments in its responses to interrogatories although he was asked to identify each adverse employment action and facts and details surrounding the actions. But, defendant does not show that plaintiff was asked about discriminatory remarks. Defendant also asserts that plaintiff did not reveal the remarks at deposition although he was asked if "he had anything further he wished to say." Again, defendant does not show that he was asked about remarks. Finally, defendant argues that plaintiff failed to provide this information as part of his disclosure obligations. Again, this Court disagrees as these are not "disclosures." Defendant also asks that ¶ 13 be disregarded. However, defendant's argument that this statement is directly contradicted by plaintiff's deposition testimony is not supported by the excerpts provided by defendant. Moreover, this issue is discussed below when addressing the retaliation claim.

Defendant seeks to exclude Burgos's affidavit because the letter attached to the affidavit is unsworn. This Court disagrees. Burgos's affidavit states that he wrote a letter to defendant and that he attaches a copy of the letter to his affidavit. This is simply an exhibit to an affidavit and need not be separately sworn.

For these reasons, both "Notices" are denied.

5

Hicks, Republic Steel's Director of Security, also attended and said now he knew who the snitches were. From the date of the meeting until July 23, 2014, when the schedule changes were announced, Burgos was not advised that changes were being considered although he was consulted in the past before changes were made. Security guards who attended the meeting had their schedule changed. The changes did not affect the number of guards who worked or the total hours worked. About two weeks after plaintiff and another second shift guard complained about the changes, Laska told Burgos, "I am tired of these old men complaining." Previously, Burgos heard Laska saying that if a guard were younger, we wouldn't have this issue. Burgos wrote a letter to defendant before the meeting about Laska's use of demeaning terms which he believed created a hostile work environment especially to older male workers. He attaches a copy of the letter. (Burgos aff.)

Casto avers that he is a 66 year-old former part-time third shift security guard. He was also familiar with the favorable treatment of the women on the first shift that was not afforded to the guards on the second and third shift. Casto resigned in June 2014, due to his wife's health and the company's refusal to provide time off for him to care for her in the hospital. As a result of the complaints, a meeting was held for second and third shift guards in early June. Casto attended and recalled Randy Hicks (director of security) saying that "now that I know who the snitches are I can go ahead and weed them out." During his employment, Casto also recalled Dan Laska making "snide"remarks about older workers. He provided some examples. (Casto aff.)

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on

7

which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

**<u>Discussion</u>**

Defendant moves for summary judgment on plaintiff's remaining claims for age and sex discrimination as well as retaliation.

**1. Age and Sex Discrimination**

"To establish a prima facie claim[4] of age discrimination under the ADEA, a plaintiff must show that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker." *Marshall v. SSC Nashville Operating Co., LLC*, 686 F. App'x 348, 353 (6th Cir. 2017) (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007)). "The fourth element may be satisfied by

---

[4] Although he seems to argue that he has direct evidence in support of his retaliation claim (as discussed below), plaintiff does not argue that he has direct evidence when addressing his sex and age claims. Thus, in the absence of direct evidence, the Court determines whether there is circumstantial evidence through the burden-shifting framework. In his discussion on retaliation, plaintiff also seems to argue that the Laska's comments regarding "old men" and older workers are direct evidence of age discrimination. Even if he did argue that Laska's comments are direct evidence and assuming Laska was the decisionmaker, plaintiff does not show that Laska took an adverse action against him in particular or, if he did, that it was a pretext for age discrimination, as discussed herein.

showing that similarly situated non-protected employees were treated more favorably." *Id.* (citations omitted). "If a plaintiff can establish a prima facie case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. If the defendant can do so, then the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for age discrimination." *Id.* Age discrimination claims brought under Ohio law are subject to the same analysis as federal ADEA claims. *Roberts v. Mestek, Inc.,* 2011 WL 6130789 (N.D. Ohio Dec. 8, 2011) (citing *Coryell v. Bank One Trust Co.*, 101 Ohio St.3d 175, 179 (2004) and *Barnes v. Gen Corp., Inc*., 869 F.2d 1457, 1465 (6th Cir.1990)).

To establish a prima facie case of sex discrimination, a plaintiff show that he (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or was treated differently from a similarly situated, non-protected employee. *Presley v. Ohio Dep't of Rehab. & Correction*, 675 F. App'x 507, 512 (6th Cir. 2017) Once the plaintiff proves the prima facie case, the employer has the burden to put forth a legitimate, nondiscriminatory reason for the employment action taken. If the employer provides such a reason, the burden once more shifts to the plaintiff to show that the reasons offered by the employer were a pretext for unlawful discrimination. *Id.* Likewise, the Court applies the same analysis to the Ohio claim of sex discrimination.

Defendant maintains that plaintiff fails to establish two elements of his prima facie case: that he suffered an adverse action and that similarly situated employees were treated differently. Nor, defendant asserts, does plaintiff show pretext.

9

**(a) Adverse Action**

Defendant argues that the scheduling change, which affected all second and third shift employees regardless of age or sex, was not an adverse action as it was, at most, a mere inconvenience without a change in salary or loss of other material benefits. Plaintiff attests to the material effects the schedule change had on his family life and marital relationship. Relying on *Spees v. James Marine, Inc.,* 617 F.3d 380 (6th Cir. 2010), plaintiff argues that schedule changes can amount to adverse employment actions where they affect the interaction with family members. And, plaintiff urges the Court to consider the change from the perspective of a reasonable person in plaintiff's position as required by *Burlington No. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). For the following reasons, the Court does not find that plaintiff has established an adverse employment action.

"In the context of a Title VII discrimination claim, an adverse employment action is defined as a 'materially adverse change in the terms or conditions' of employment." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (quoting *Kocsis v. Multi–Care Mgmt. Inc.,* 97 F.3d 876, 885 (6th Cir.1996)). "An adverse employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

"The 'materially adverse action' element of a Title VII retaliation claim is substantially different from the "adverse employment action" element of a Title VII race discrimination claim. Under the former, plaintiff need only show 'that a reasonable employee

would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Id.* (quoting *Burlington No. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006[5])). " *See also Hixon v. Donahoe,* 2015 WL 2405973 (E.D.Mich. May 19, 2015) (recognizing that the adverse employment action element does not have the same meaning in the context of an ADEA claim and that of a retaliation claim under Title VII or the ADEA)

Thus, the Court does not analyze this element from the perspective of a reasonable person in plaintiff's position as urged by plaintiff. Moreover, plaintiff relies on *Spees,* where the Sixth Circuit recognized that "an inconvenience resulting from a less favorable schedule can render an employment action 'adverse' even if the employee's responsibilities and wages are left unchanged." But there, the plaintiff showed that the schedule change aversely affected her ability to raise her daughter as a single mother. Plaintiff herein has not raised an issue of fact to show that the schedule change was more than an inconvenience to the previous way in which plaintiff spent time with his grandchildren. Otherwise, the schedule change from weekends off to weekdays off did not cause any significant change in plaintiff's employment conditions or benefits.

Moreover, defendant submits evidence that it offered to move plaintiff to first shift so that he would only have to work weekdays, but that plaintiff declined due to his part-time job managing the car wash. (Jaskiewicz aff. ¶14) Plaintiff only addresses whether he was offered

---

[5]     In *Burlington No. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006), the court noted in the retaliation context that under certain circumstances, a scheduling change could be a materially adverse action (e.g., a schedule change could make a big difference to a young mother with school-age children) and that it must be judged from the perspective of a reasonable person in the plaintiff's position.

11

a second shift weekday position at another location. (Doc. 26 at 9-10). Plaintiff does not dispute Jaskiewicz's averment. At deposition, plaintiff was asked about a letter written by defendant to the EEOC in response to plaintiff's charge. (pltf. depo. 164, Ex. 24) The letter states that after the schedule change in July 2014, plaintiff was offered a Monday through Friday day shift position but that he declined, stating that he wanted to stay on second shift. (Ex. 24) At deposition, plaintiff stated that he could not remember being offered that shift, but "I could not take it." He also testified, "I don't remember being offered it, but I know I couldn't do it, so it didn't matter." (pltf. depo. 166) He further testified, "I couldn't work first, yeah." He stated that the reason he could not work first shift was that he was the manager of the car wash at which he worked seven days a week from 8 a.m. until 10 a.m. or noon. (*Id.* 165-168)

Thus, even if the schedule change is considered an adverse action due to the impact on plaintiff's family life, the evidence shows that he was offered a day shift position with weekends off but that he declined it due to his other job. Consequently, it cannot be said that plaintiff suffered an adverse employment action. Without this element, plaintiff is unable to satisfy the prima facie case for sex or age discrimination.

**(b) similarly-situated non-protected employees**

As the basis of plaintiff's argument is that the first shift was treated more favorably because their schedules did not change, he must show that the first shift was comprised of non-protected employees, i.e., younger and female. Defendant maintains that, contrary to plaintiff's assertion, the first shift was not primarily composed of younger females.

Plaintiff avers that the first shift consisted of three females under the age of 30 (Cierra

Diaz, Hallee Dunfee, and Hannah Goteze) and Dan Laska. Plaintiff notes that another male, Curtis Silvers, also worked the first shift but had a different assignment. (pltf. aff. ¶ 7) The other two affidavits presented by plaintiff are in accord. (Burgos aff. and Casto aff.)

Defendant's Operation Manager for the Cleveland Office, Jaskiewicz, avers that the first shift was comprised of five males (Laska, Silvers, Anthony Harris, Arthur Lusane, and Jorge Wilson) and two females (Cierra Diaz and Hallee Dunfee). (Jaskiewicz aff.) Jaskiewicz attaches the complete labor scheduling records. (Exhibit B).

Plaintiff argues that the scheduling records show that Hannah Goteze did work the first shift. But, defendant points out that although she was on the first shift, she only worked two days, three weeks apart, before the schedule changed and did not return to the Republic Steel site until March 2015. (Doc. 24-7 at G4S00000368) Defendant also points out that Cierra Diaz regularly worked the second and third shifts following the schedule change. (*Id.* at G4S00000350- 354) Hallee Dunfee also worked the second and third shifts on occasion after the change. (*Id.* at G4S00000361- 364) Plaintiff correctly points out that Anthony Harris and Jorge Wilson were hired after the schedule change. (*Id.* at G4S00000370, 435). It appears that at the time of the schedule change, Arthur Lusane was not on the first shift. (*Id.* at G4S00000401)

On balance, therefore, plaintiff does not show that the first shift was composed primarily of younger females. There were two males, Dan Laska and Curtis Silvers (who worked on the first shift even though with a different assignment) and, at most, three females, Cierra Diaz, Hallee Dunfee, and Hannah Goteze (although she could hardly be considered a first shift employee as she had only worked two days). The evidence also shows that Cierra

Diaz and Hallee Dunfee worked the second and third shifts, as well as the first shift, after the schedule change.

Defendant additionally argues that while plaintiff claims younger women on the first shift were treated more favorably because their schedule did not change, plaintiff was offered a first shift weekday position but declined it. As such, plaintiff was offered to be placed in the shift that he contends was comprised of the more favorably treated employees.

Plaintiff's argument, however, is that the first shift employees were treated more favorably because their schedule did not change while the schedules of the second and third shift employees did change. Nevertheless, while plaintiff maintains that the schedules of the females on the first shift were not changed, he was offered that shift with weekends off. He declined it. On this basis, plaintiff cannot demonstrate that non-protected similarly situated employees were treated differently.

Being unable to show that he suffered an adverse action or that similarly situated non-protected employees were treated better, plaintiff fails to establish a prima facie case of sex or age discrimination.

**(c) Pretext**

Even assuming he established a prima facie case, plaintiff fails to demonstrate pretext. Defendant sets forth a non-discriminatory reason for the schedule change. Jaskiewicz avers that the schedule was changed in late July 2014 "at the request of Republic Steel, and in an effort to reduce labor costs at the site. Specifically, Republic Steel eliminated a post position to which plaintiff and other security officers had been assigned, necessitating a consolidated

labor schedule that saved 120-180 hours per week in labor costs."[6] (Jaskiewicz aff. ¶ 10)

Plaintiff may establish pretext by showing that defendant's reason had no basis in fact, did not actually motivate the action, or was insufficient to motivate the action. *Treadway v. California Products Corporation,* 659 Fed.Appx. 201 (6th Cir. 2016) (citations omitted).

Plaintiff seems to argue that defendant's asserted reason that Republic was trying to save hours has no basis in fact. Plaintiff points to his affidavit wherein he avers that the Globe Street gate was used during a construction project to complete a new furnace at the mill. Further, "The furnace project was completed late July or early August 2014 and the gate was then closed. In Affiant's opinion, the closing of that gate did not change the total number of security personnel who worked or the hours they worked." (pltf. aff.¶ 12) Eduardo Burgos also avers that the schedule changes "did not affect the number of guards who worked at the Republic Steel Mill or the total number of hours the guards worked." (Burgos aff. ¶ 6)

While plaintiff maintains that the elimination of the post did not change the number of guards who worked or the number of hours they worked, he does not dispute the reason for the scheduling change because he acknowledges that the Globe Street post was eliminated once the furnace project was complete. Defendant does state that the elimination of the post decreased the number of guards working, but "necessitat[ed] a consolidated labor schedule

---

[6] The letter written by defendant to the EEOC in response to plaintiff's charge states the same. (pltf. depo. 164, Ex. 24) The letter indicates that plaintiff was hired in January 2014, and assigned to the "Globe Post." It further states: "Effective July 28, 2014 the Globe Post was eliminated completely primarily due to budgetary reasons and to reduce overtime costs. [Plaintiff] was offered a Monday through Friday 0600 to 1400 shift as a Pearl Gate Support Officer. He declined stating he wanted to remain on second shift so he was given a Monday and Thursday through Saturday second shift from 1400 to 2200 at the Pearl Gate Support post." (*Id.*)

15

that saved 120-180 hours per week in labor costs."

Furthermore, plaintiff also does not dispute that the change affected all second and third shift employees regardless of age or sex. There were females on the second and third shifts. (Jaskiewicz aff. Ex. A) Instead, plaintiff argues that the schedules of the primarily female guards on the first shift were left unchanged. However, as discussed above, the first shift was not comprised of primarily female guards and plaintiff was offered a first shift position so that he could still have weekends off but he declined due to his second job. Moreover, when defendant lost the contract with Republic Steel, defendant offered plaintiff various alternative positions at different sites but he declined. This further undermines plaintiff's theory that defendant wished to discriminate him because of his age or sex.

For these reasons, plaintiff's age and sex discrimination claims fail.

**2. Retaliation**

To establish a prima facie case of retaliation, a plaintiff must show that 1) he engaged in protected activity, 2) his exercise of protected rights was known to defendant, 3) defendant thereafter took an adverse employment action against him, and 4) there was a causal connection between his protected activity and the adverse employment action. *Frazier v. Richland Pub. Health*, 685 F. Appx 443, 451 (6th Cir. 2017) (citing *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). "An adverse employment action under Title VII's retaliation provision may be established by showing that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations and internal quotations omitted). Once again, if the employee

establishes the prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer satisfies its burden, the burden shifts back to the employee to demonstrate that the employer's proffered reason was not the true reason for the adverse employment action. *Id.*

Defendant argues that plaintiff did not engage in protected activity. Defendant points out that plaintiff testified at deposition that on July 1, 2014, Area Supervisor Ron Cerny made a site visit to Republic Steel to address concerns of favoritism afforded women on the first shift raised by the second and third shift guards. Cerny "offered a private conversation in Randy Hicks's office, whoever wanted to speak to him." Plaintiff declined the offer because he did not have any problems at that time. Cerny asked plaintiff whether he had any problems and plaintiff responded, "No." Plaintiff "didn't know what was going on with other people and what their problems were." Plaintiff did not ask for the meeting which had been requested by other second and third shift guards. (pltf. depo. 134-135, 217-219) However, while it is clear from the testimony that plaintiff did not make any complaints prior to July 1, it is not clear whether or not he attended the meeting. Nonetheless, he states in his affidavit that he did attend the meeting with the second and third shift guards along with Dan Laska, Ron Cerny, and Randy Hicks. (pltf. aff. ¶ 13) The Court assumes plaintiff attended the meeting and that this constitutes protected activity known to defendant.

Plaintiff must then show that he suffered an adverse action which a reasonable employee would have found to be materially adverse and a causal connection to the adverse activity. Plaintiff cannot do so. Plaintiff does not dispute that the scheduling change was "global" and that it affected all second and third shift employees. The Court has not been

17

presented with evidence showing whether the other second and third shift employees who attended the meeting and whose schedules changed considered the changes to be adverse. However, a statement prepared by Laska and submitted as an attachment to defendant's response to the EEOC states that the schedule change was "met with resistance from 1 employee." That employee was plaintiff. (pltf. depo. Ex. 24 , Attachment A). Thus, it appears that only plaintiff considered the change to be an adverse action. Plaintiff maintains that the scheduling change was adverse to him because he no longer had weekends off. Plaintiff argues that a reasonable employee would have considered this adverse because of the impact it had on his ability to be with his family. However, plaintiff must show that a reasonable employee would have considered the change to be *materially* adverse. Although not having weekends off disturbed his prior routine of visiting his grandchildren on weekends, the change really did not cause more than an inconvenience. Additionally, there is evidence that plaintiff was offered a first shift position with weekends off and he declined due to his second job.

Plaintiff seems to argue that there is a causal connection between the protected activity (the meeting) and the adverse employment action (the scheduling change) based on temporal proximity and the remarks made by Laska and Hicks. Assuming there was an adverse action, the Court would find a causal connection based on temporal proximity. However, plaintiff also seems to argue this is direct evidence of retaliation. Plaintiff presents evidence that Laska told those attending the meeting, "I got you on my radar," and Hicks stated that now he knew who the "snitches" were and he could now "weed them out." (pltf. aff.¶ 14; Burgos aff. ¶5; Casto aff. ¶ 5) However, there is no evidence that Laska or Hicks was actually the

decisionmaker as to the schedule changes. The Sixth Circuit recognizes that direct evidence must come from decisionmakers. *Geiger v. Tower Auto,* 579 F.3d 614 (6th Cir. 2009). Plaintiff only presents evidence that Laska "announced the changes" (pltf aff.) or "posted" the schedules (Burgos aff.). In arguing the same actor inference elsewhere in its motion, defendant states that Jaskiewicz "facilitated the scheduling changes." (Doc. 24 at 12) There is no evidence that Randy Hicks, Republic Steel's Director of Security, was a decisionmaker. Moreover, plaintiff testified that it was Hicks who called and offered him the position with Republic Steel within a week after defendant lost the contract. Plaintiff accepted the offer. (pltf. depo. 42) Thus, it is unlikely that Hicks harbored animus against plaintiff for attending the meeting and retaliated against him by changing his schedule.

Because he does not show an adverse action, plaintiff cannot establish a prima facie case of retaliation. Even if he could, he has not demonstrated pretext, as discussed above.

For the foregoing reasons, summary judgment is granted as to both counts of plaintiff's Amended Complaint.

**Conclusion**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.


      /s/ Patricia A. Gaughan
     PATRICIA A. GAUGHAN
     United States District Court
     Chief Judge

Dated: 10/24/17